RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TISEO ARCHITECTS, INC.,

        *Plaintiff-Appellant,*

     *v.*

No. 06-1819

B & B POOLS SERVICE AND SUPPLY COMPANY; JIM
MANDZIUK; JOHN JUNTUNEN; GARY L. OLSON,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-70537—Nancy G. Edmunds, District Judge.

Submitted: May 30, 2007

Decided and Filed: July 27, 2007

Before: ROGERS and COOK, Circuit Judges; DOWD, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Frederick F. Butters, THOMAS M. KERANEN & ASSOCIATES, P.C., Bloomfield
Hills, Michigan, for Appellant. Eugene S. Hoiby, EUGENE S. HOIBY & ASSOCIATES, Livonia,
Michigan, for Appellee.

_____

**OPINION**

_____

     ROGERS, Circuit Judge. Tiseo Architects, Inc., alleged that another architect, Gary Olson,
copied a design and site plan drawings that Tiseo Architects had prepared for B&B Pools Service
and Supply Company. After a bench trial, the district court ruled in favor of the defendants, B&B
Pools and Olson. Tiseo Architects now appeals, arguing that the district court applied the wrong
legal standard in reaching its conclusion that Olson's design and construction drawings were not
substantially similar to Tiseo Architects' design and site plan drawings. Because the district court
properly analyzed the similarity of the works after filtering out the unprotectable elements of Tiseo
Architects' drawings, the judgment of the district court is affirmed.

_____

[*]The Honorable David Dudley Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting
by designation.

In the summer of 2003, John Juntunen, president and CEO of B&B Pools, first asked Gary Olson to prepare the plans for the renovation and expansion of B&B Pools' commercial building in Livonia, Michigan.  After receiving a sketch of the proposed building plan, Olson determined that he was unable to work on the project at that time.  On June 18, 2003, B&B Pools entered into a contract with Tiseo Architects for the preparation of a design and site plan for the proposed addition. The contract left open the possibility that B&B Pools might later retain Tiseo Architects for the "Construction Documents Phase" of the project.

Benedito Tiseo, president of Tiseo Architects, testified that when he first met with B&B Pools, they may have given him "some rough, crude sketch" illustrating what B&B Pools wanted the new offices to look like.  Tiseo Architects was also provided with various requirements for the plans based upon zoning requirements and B&B Pools' preferences.  Additionally, Benedito Tiseo testified that he revised his drafts of the site plan in response to specific changes requested by Juntunen.

B&B Pools used the site plan prepared by Tiseo Architects to obtain site plan approval from the city zoning board, but did not retain Tiseo Architects to draw the construction plans.  Tiseo Architects was paid in full according to the terms of the parties' contract for the initial design and site plan documents.  Later, B&B Pools hired Olson to prepare the construction documents. Juntunen provided Olson with photographs of the existing building, sketches of the existing layout, and "some ideas about what [Juntunen] wanted to accomplish in the form of an addition."  Olson also had access to Tiseo Architects' drawings, though he testified that he did not copy Tiseo Architects' design.  As he had done with Tiseo Architects' site plan, Juntunen requested multiple revisions of the architectural plans prepared by Olson.

In November, 2004, Tiseo Architects discovered that B&B Pools had completed the addition. Tiseo Architects then filed its drawings of the site plan with the Copyright Office and initiated this action against B&B Pools, John Juntunen, and Gary Olson, alleging that the creation of the construction plans for the addition violated Tiseo Architects' copyright in the site plan drawings. Tiseo Architects' complaint also alleged violations of the Lanham Act and civil conspiracy.

The district court conducted a bench trial.  At the close of the evidence the court ruled for B&B Pools and Olson on the Lanham Act and civil conspiracy counts because "no proof" was presented to support those claims.  As to the alleged copyright violation, the parties agreed that the sole issue was whether Olson's construction plans were substantially similar to Tiseo Architects' site plan drawings.  In an oral opinion, the district court held that the plaintiff, Tiseo Architects, "did not carry the burden of proving substantial similarity by a preponderance of the evidence" and granted judgment in favor of the defendants.  Tiseo Architects filed a motion for reconsideration, which the district court denied.  Tiseo Architects now appeals the district court's judgment with respect to its copyright and Lanham Act claims.

The district court applied the correct legal standard in finding that the architectural drawings at issue were not substantially similar.  Tiseo Architects' argument on appeal is based on a misinterpretation of the district court's opinion, and is therefore without merit.

"Since direct evidence of copying is rarely available, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (internal quotation marks and citation omitted).  The district court began its opinion by observing that Tiseo Architects, as plaintiff, had the burden of proof.  The court then stated that of the two elements of a prima facie copyright claim in the absence of evidence of direct copying, access was admitted, and therefore the only disputed matter before the court was "the issue

of substantial similarity." In addressing the merits of the substantial similarity issue, the district court noted that "the floor plan[s] [of both Tiseo Architects' and Olson's designs are] very, very similar . . . you can just look at the two drawings and see that they are substantially similar." The court then continued, "[h]owever, there is an explanation for that offered by the defendant that I think balances the fact of the similarity of the two works."

The district court explained that both drawings were based on Juntunen's original sketches, that both incorporated Juntunen's suggestions for various features of the floor plan, and that the options for how to design the addition "were extremely limited" by zoning requirements and the presence of a load-bearing wall that the plans had to accommodate. The court concluded that "there weren't a lot of ways to lay out these offices." The court also found that the floor plan was "at least as much Mr. Juntunen's concept as it was Mr. Tiseo's" and that "there are very few ways that this idea can be expressed consistent with the specific requests made by Mr. Juntunen, and I think that balances, if not outweighs the substantial similarity between the floor plans." The district court then concluded its analysis with a discussion of the differences between the plans. These included "differences in materials used, [ ] differences in the roof line . . ., [and] differences in the windows." Based on this analysis, the district court concluded that Tiseo Architects failed to prove that the drawings were substantially similar.

Tiseo Architects contends that the district court's analysis was improper because the court first made a factual finding of substantial similarity and then proceeded to "engage[] in a 'balancing' test to address how [the court] believed those documents came to be substantially similar." Tiseo Architects argues that, since no such balancing test is called for by the law of copyrights, the district court applied the wrong legal standard and should be reversed.

It is well established that "originality is a constitutionally mandated prerequisite for copyright protection." *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 351 (1991). Accordingly, the substantial similarity analysis of a copyright infringement claim is divided into two steps: "the first step requires identifying which aspects of the artist's work, if any, are protectible by copyright; the second involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work." *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003) (internal quotation marks and citations omitted). "The essence of the first step is to filter out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity—through a variety of analyses." *Id.* (citation omitted). The district court's discussion of the "explanation" for the "substantial similarity" between the floor plans merely identifies those unoriginal and uncreative parts of Tiseo Architects' work that are not protectable by copyright. Then, after extracting those unprotectable aspects of Tiseo Architects' drawings, the district court compared the remaining protectable elements to Olson's work, and found that they were not substantially similar.

The portion of the district court's opinion that Tiseo Architects labels a "balancing test" reflects the court's application of the first step described in *Kohus*. The court "filtered out" many elements of Tiseo Architects' site plan drawings because they were "unoriginal," having been based on Juntunen's sketch; and the court identified several elements of the site plan that "possess[ed] no minimal degree of creativity" because they were dictated by zoning regulations or the realities of the existing physical structure. The district court then turned to the second step, comparing the allegedly infringing building plans to the protectable elements of Tiseo Architects' site plan drawings. In so doing, the district court found "a lot of differences" and no substantial similarity.

Because the district court applied the correct legal analysis in determining that Olson's work did not infringe on Tiseo Architects' copyright, this court reviews the district court's factual finding

that there is no substantial similarity between the works for clear error. *Ellis v. Diffie*, 177 F.3d 503, 505 (6th Cir. 1999). Tiseo Architects offers no argument on appeal to refute the district court's factual finding that the protectable aspects of the drawings are not substantially similar. Therefore this court has no basis for disturbing the district court's judgment that Olson's construction drawings did not violate Tiseo Architects' copyright in the site plan drawings. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("Because [appellant] wholly fails to address this issue in her appellate brief, we conclude that she has waived her right to appeal the district court's [ruling].").

Finally, Tiseo Architects' Lanham Act claim fails because it parallels its copyright claim. "Where a plaintiff's Lanham Act claim parallels his copyright infringement claim, a finding of no substantial similarity on the copyright claim precludes the Lanham Act claim." *Stromback*, 384 F.3d at 300. Like the plaintiff in *Stromback*, Tiseo Architects "makes no attempt to distinguish his Lanham Act claim from his copyright infringement claim or to explain how there could be a likelihood of confusion when the two works are not substantially similar." *Id*. Accordingly, the district court correctly denied this claim as well.

For the foregoing reasons, the judgment of the district court is AFFIRMED.